## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ABRAHIM MOHAMED FOFANA,

                         Plaintiff,

v.

ALEJANDRO MAYORKAS, Secretary of the
United States Department of Homeland
Security, UR JADDOU, Director of United
States Citizenship and Immigration
Services, CONNIE NOLAN, Associate
Director, Service Center Operations,
United States Citizenship and
Immigration Services, LESLIE TRITTEN,
Director, Minneapolis St. Paul Field
Office, United States Citizenship and
Immigration Services, and UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES,

                         Defendants.

Civil No. 18-3163 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

---

Cameron Lane Youngs Giebink and David L. Wilson, **WILSON LAW GROUP**, 3019 Minnehaha Avenue, Minneapolis, MN 55406, for Plaintiff.

Friedrich A. P. Siekert, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, Joseph F. Carilli, Jr., **CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION**, 600 Nineteenth Street Northwest, Washington, DC 20006, and Richard Gordon Winstead Ingebretsen, **DEPARTMENT OF JUSTICE, CIVIL DIVISION**, P.O. Box 868, Ben Franklin Station, Washington, DC 20044, for Defendants.

Nearly sixteen years after Plaintiff Abrahim Mohamed Fofana applied for adjustment of status, United States Citizenship and Immigration Services ("USCIS") denied

his petition.  But even with that much time to review Fofana's materials, USCIS reached an untenably flawed decision.  It misinterpreted the Immigration and Nationality Act ("INA").  And it failed to consider critical aspects of the United Liberation Movement for Democracy's ("ULIMO") status as a Tier III terrorist organization and Fofana's knowledge thereof.  Because USCIS's decision was arbitrary and capricious, the Court will grant summary judgment for Fofana and vacate and remand for further administrative proceedings.  USCIS protests that the Court does not have subject matter jurisdiction to take such action.  But because the Court reviews only USCIS's non-discretionary predicate decisions, 8 U.S.C. § 1252(a)(2)(B)(ii) does not strip the Court's jurisdiction.

**BACKGROUND**

**I.   FACTS**

Fofana, a Liberian native, moved to Saudi Arabia the same year Charles Taylor's National Patriotic Front of Liberia ("NPFL") invaded his home country.  (Mem. Op. & Order Granting Pl.'s Mot. Summ. J. ("1st MSJ Order") at 2, Jan. 21, 2020, Docket No. 35.)  Shortly thereafter, ULIMO emerged in opposition to Taylor's forces.  (Am. Certified Administrative R. ("Am. CAR"), Ex. 8 ("Am. CAR-8") at 49, Feb. 6, 2023, Docket No. 78-8.)  As Fofana understood the situation, ULIMO was working with the incumbent Liberian government and the peacekeeping forces of the Economic Community of West African States Monitoring Group, with the backing of numerous west African countries, to fight

against the NPFL's coup.  (See Am. CAR, Ex. 1 ("Am. CAR-1") at 5, 22, 24, Feb. 6, 2023, Docket No. 78-1.)[1]

Fofana testified that he believed ULIMO worked to protect civilians and was a legitimate organization, particularly given its domestic and international allies.  (*Id.* at 22, 24.)  He further testified that he "never heard anything, not even a rumor, about ULIMO killing civilians, committing war crimes, or doing anything else that would be labeled a terrorist activity."  (*Id.* at 24.)  In reality, ULIMO was engaged in bloody factional conflict and committed widespread war crimes and crimes against humanity.  (*Id.* at 4.)  In 1997, shortly after the war ended, ULIMO disbanded.  (*Id.* at 50.)

While a student in Saudi Arabia, Fofana joined the Liberian Student Organization ("LSO") as assistant secretary.  (*Id.* at 4.)  Throughout Fofana's membership, from 1992 through 1995, the LSO solicited donations to support ULIMO.  (*See id.* at 22.)

Fofana came to the United States in 2001 and was granted asylum.  (1st MSJ Order at 3, 6.)  After the statutory yearlong waiting period, he applied for adjustment of status as a lawful permanent resident pursuant to 8 U.S.C. § 1159.  (*Id.* at 7.)  Nearly sixteen years later, USCIS denied his application.  (*See* Am. CAR-1 at 4, 6.)  In the denial letter, USCIS noted it may only adjust status for "admissible" noncitizens, and Fofana was inadmissible on terrorism grounds.  (*Id.* at 3, 6.)  The letter then walked through the tangle

---

[1] The broad strokes of Fofana's belief of ULIMO's domestic and international support were accurate.  (*See* Am. CAR-8 at 49.)

of cross-references characteristic of a terrorism determination under 8 U.S.C. § 1182(a)(3)(B).  (*Id.* at 3–6); *see Kerry v. Din*, 576 U.S. 86, 113 (2015) (Breyer, J., dissenting) ("[Section 1182(a)(3)(B)] is a complex provision with 10 different subsections, many of which cross-reference other provisions of law.").

USCIS decided Fofana was inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I).  (Am. CAR-1 at 6.)  USCIS further defined that provision by reference to 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc), which prohibits solicitation of funds for any group the solicitor knows or should know to be a terrorist organization as defined in clause (vi)(III) (so-called Tier III terrorist organizations).  (*Id.* at 3–5.)  Section 1182(a)(3)(B)(vi)(III) in turn defines Tier III organizations as those that engage in activities described in §§ 1182(a)(3)(B)(iv)(I)-(VI).  (*See id.* at 4.)  And § 1182(a)(3)(B)(iv)(I) prohibits the commission of terrorist activities, defined in part under § 1182(a)(3)(B)(iii)(V)(b) as the use of explosives, firearms, and other weapons.  (*Id.*)  USCIS noted numerous violent crimes committed by ULIMO between 1990 and 1996 and concluded that ULIMO was a Tier III terrorist organization.  (*Id.*)  USCIS then decided that because Fofana knew or should have known about ULIMO's violence when he provided support as an LSO member, he engaged in terrorist activity under § 1182(a)(3)(B)(i)(I), "as defined by" § 1182(a)(3)(B)(iv)(IV)(cc).  (*Id.* at 5.)  Finally, USCIS declined to exercise its exemption authority pursuant to § 1182(d)(3)(B)(i).  (*Id.*)

## II.    PROCEDURAL HISTORY

Fofana filed this action alleging that USCIS violated the Administrative Procedures Act ("APA") and seeking declaratory judgment that (1) USCIS was collaterally estopped

from asserting that Fofana was inadmissible based solely on evidence from his asylum proceedings; and (2) Fofana did not engage in a terrorist activity. (Compl. ¶¶ 56–71, Nov. 12, 2018, Docket No. 1.) The Court entered summary judgment for Fofana on the first issue. (*See* 1ˢᵗ MSJ Order at 23.) The Eighth Circuit reversed. *See Fofana v. Mayorkas et al.*, 4 F.4th 668, 670 (8ᵗʰ Cir. 2021). On remand, because neither the Court's earlier order nor the Eighth Circuit addressed Fofana's second contention, the Court allowed Fofana's challenge to proceed on that ground. (*See* Order on Remand at 5–6, Oct. 21, 2022, Docket No. 72.) The parties now move for summary judgment on whether Fofana engaged in a terrorist activity.

## DISCUSSION

### I. STANDARD OF REVIEW

#### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or

denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

When a court reviews agency action under the APA, the entire case on review is a question of law. *Am. Bioscience, Inc. v. Thompson et al.*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *Mahnomen Cnty. v. Bureau of Indian Affs.*, 604 F. Supp. 2d 1252, 1255–56 (D. Minn. 2009). The question is whether, based on the administrative record, the agency's action was lawful. *See id.* at 1256. Thus, resolution at the summary judgment stage is likely.

### B.   Administrative Procedure Act

The APA allows a court to set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Gipson v. I.N.S.*, 284 F.3d 913, 916 (8th Cir. 2002) (quoting *id.*). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citing *State Farm*, 463 U.S. at 42–43). A court will affirm the agency's findings of fact if they are supported by "substantial evidence." *Redd v. Mukasey*, 535 F.3d 838, 842 (8th Cir. 2008).

The substantial evidence standard is "extremely deferential," and "the agency's findings of fact must be upheld unless the [noncitizen] demonstrates that the evidence . . . presented not only supports a contrary conclusion but compels it." *Al Yatim v. Mukasey*, 531 F.3d 584, 587 (8ᵗʰ Cir. 2008) (emphasis omitted) (internal quotation marks omitted).

Although "substantial deference" is given to interpretations of statutes and regulations administered by the agency under review, conclusions of law made by agencies are reviewed de novo unless the agency is interpreting a statute it administers. *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8ᵗʰ Cir. 2009).

## II.   SUBJECT MATTER JURISDICTION

A court must dismiss an action if it determines at any stage of litigation that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Dismissal under Federal Rule of Civil Procedure 12(b)(1) "will not be granted lightly.  Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction."  *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8ᵗʰ Cir. 1996) (citation omitted).

"[I]t is common ground that if review is proper under the APA," district courts have subject matter jurisdiction under 28 U.S.C. § 1331.  *Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988).  Nonetheless, the APA specifies that agency actions are not reviewable when a statute precludes judicial review.  5 U.S.C. § 701(a)(1).  Here, the United States contends 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of jurisdiction.  That provision precludes judicial review of "any other decision or action of the Secretary of Homeland

-7-

Security the authority for which is specified under this subchapter to be in the discretion of the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).[2] Fofana counters that § 1252 is inapplicable because (1) his application was denied based on predicate, non-discretionary findings, and (2) § 1252 applies only to removal orders.

Notwithstanding 8 U.S.C. § 1252(a)(2)(B)(ii), the Court has jurisdiction to consider the merits of this action.  The text of § 1252 and Eighth Circuit precedent support retention of jurisdiction over the non-discretionary predicates to discretionary final decisions.  And neither the holding nor reasoning of *Patel v. Garland*, 592 U.S. 328 (2022) remove jurisdiction here.  On the other hand, statutory text and precedent weigh against Fofana's argument that 8 U.S.C. § 1252 only applies to removal orders.  But because every issue raised on the merits is a non-discretionary predicate determination, the Court has subject matter jurisdiction to proceed in full.

The Court's analysis is framed throughout by a surmountable presumption of judicial review.  *See Kucana v. Holder*, 558 U.S. 233, 251 (2010).  When there are multiple reasonable interpretations of a statute, courts "adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review."  *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020)

---

[2] Section 1252 generally references "the Attorney General or the Secretary of Homeland Security."  This action only involves the Secretary of Homeland Security.  For brevity's sake, the Court will alter statutory quotations to refer only to the Secretary without noting omission of the Attorney General.  Such omissions have no effect on the application of the statute to this action.

(quoting *Kucana*, 558 U.S. at 251).  USCIS does not provide clear and convincing evidence of congressional action stripping the Court's jurisdiction, as would be necessary to overcome the presumption of reviewability.  *See id.* (citing *Reno v. Cath. Soc. Servs. Inc.*, 509 U.S. 43, 64 (1993)).

### A.    Predicate Questions

#### 1.    Statutory Text

8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of "any other decision or action of the Secretary the authority for which is specified under this subchapter to be in the discretion of the Secretary."  Fofana applies for adjustment of status pursuant to 8 U.S.C. § 1159(b), which admittedly grants the Secretary ultimate discretion.  *See* 8 U.S.C. § 1159(b) ("The Secretary of Homeland Security, **in the Secretary's discretion** . . . **may** adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . ." (emphasis added)).

But the Secretary may only exercise that discretion for noncitizens who meet five criteria.  *See* 8 U.S.C. §§ 1159(b)(1) – (5).  As relevant here, the Secretary may only exercise discretion to adjust status for a noncitizen who "(5) is admissible."  *See* 8 U.S.C. § 1159(b)(5).  If criteria (1) through (5), including admissibility, are met, only then does the government official have the option to grant adjustment of status.  Here, Fofana failed at the fifth requirement (admissibility) so there was no occasion for the Secretary to exercise his § 1159 discretion.  Even if the Secretary wanted to adjust Fofana's status, he could not.

In turn, the inadmissibility determination is mandatory. "Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible," full stop. 8 U.S.C. § 1182(a). The adjustment of status statute even has a section on "[c]oordination with section 1182." *See* 8 U.S.C. § 1159(c). Section 1159 gives the Secretary leeway to set aside certain inadmissibility grounds for certain purposes but clarifies that waiver discretion does not extend to subparagraph (3)(B) of § 1182(a)—the terrorist activities subparagraph. *Id.* USCIS's denial letter explicitly acknowledged that "the [8 U.S.C. § 1159(c)] waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities))." (Am. CAR-1 at 3.)

Notwithstanding the lack of § 1159(c) waiver, the Secretary is left with a narrow discretionary escape valve. When, as here, the applicant is classified based on association with a Tier III terrorist organization, the Secretary may exercise "sole unreviewable discretion" to waive the terrorism bar after consultation with the Secretary of State and Attorney General. 8 U.S.C. § 1182(d)(3)(B)(i). The Secretary declined to exercise his discretionary exemption authority to Fofana's application. But that decision was only occasioned by the Secretary's prior determination that the terrorism bar applied in the first instance.

In sum, the Secretary made the required terrorism inadmissibility determinations before considering whether to exercise his discretionary § 1182(d)(3)(B)(i) authority. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). And the Secretary did not even mention his § 1159 discretion

-10-

to ultimately adjust status.   There was no need when Fofana failed the threshold requirement of admissibility.   Because Fofana's challenge attacks only the non-discretionary threshold matters, 8 U.S.C. § 1252, by its plain text, does not strip the Court's jurisdiction.   Where the Court reaches contrary conclusions on those predicate issues, it will remand for the Secretary to decide whether to exercise his discretionary authority.   Such procedure ensures the Court never reviews any "decision or action" left to the Secretary's discretion.   8 U.S.C. § 1252(a)(2)(B)(ii).

### 2.   Eighth Circuit Precedent

The Court's analysis accords with the Eighth Circuit's.   Notably, in *Bremer v. Johnson*, the Eighth Circuit confronted whether 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review of family visa applications.   834 F.3d 925, 928–31 (8th Cir. 2016).   USCIS exercised its "sole and unreviewable discretion" over whether a family visa applicant had been convicted of an offense against a minor and posed a risk to the family member.   *Id.* at 929. The Eighth Circuit acknowledged that federal courts do not have jurisdiction over the ultimate decision, but nonetheless held that whether the discretionary statutory provision applied in the first instance was subject to judicial review.   *Id.* at 929.   Thus, a district court has jurisdiction to resolve "predicate legal questions" requiring construction of "matter[s] antecedent to the Secretary's exercise of sole and unreviewable discretion." *Id.*; *see also Ibrahimi v. Holder*, 566 F.3d 758, 763–64 (8th Cir. 2009); *Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008).

-11-

So too here.  Whether ULIMO was a terrorist organization, and whether Fofana engaged in terrorist activities, are "statutory conditions precedent to the agency's authority to exercise discretion."  *Bremer*, 834 F.3d at 929.  Only after making those determinations could the Secretary apply his § 1182(d)(3)(B)(i) discretionary exemption authority to the terrorism bar.  Likewise, the Secretary could only exercise discretion to change Fofana's status under § 1159 after deciding he was admissible.

Although the relevant jurisdictional division is between discretionary and non-discretionary determinations, the parties here tack on an additional barrier: not only must a decision be non-discretionary, it must also be legal rather than factual to be reviewable. That distinction is unfounded.  To be sure, *Bremer* spoke of "predicate legal questions." 834 F.3d at 929.  But nowhere did it say predicate factual questions were unreviewable. Although the legal versus factual divide would be relevant if the Court were exercising jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D),[3] that distinction appears nowhere in the text of, and is completely irrelevant to, the preclusive effect of 8 U.S.C. § 1252(a)(2)(B)(ii). Accordingly, the Court has jurisdiction to review all non-discretionary decisions at issue in this case, whether legal or factual.

---

[3] The escape valve of 8 U.S.C. § 1252(a)(2)(D) does not apply to this case.  *See Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009).  Section 1252(a)(2)(D) reestablishes jurisdiction for Article III review of legal issues, but only in "an appropriate court of appeals."

3.    *Patel v. Garland*

Defendants argue, text and Eighth Circuit precedent notwithstanding, that the Court's division of predicate questions from discretionary decisions is untenable following the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328 (2022).  But *Patel* does not apply here.

Patel applied for adjustment of status under 8 U.S.C. § 1255(i), which allows the Attorney General discretion to adjust the status of noncitizen applicants.  *Id.* at 333.  For a noncitizen to be eligible for adjustment, though, they must be admissible.  *Id.* at 333–34.  USCIS determined that Patel did not meet that threshold requirement.  *Id.* at 334.

8 U.S.C. § 1252(a)(2)(B) is divided into two subsections.  Subsection (i) bars review of "any judgment regarding the granting of relief" under a list of enumerated statutes.  Because § 1255 is one of the enumerated statutes in § 1252(a)(2)(B)(i), that provision—not subsection (ii)—governed the jurisdictional question in *Patel*.  *Id.* at 336–37.  Fofana's case, in contrast, concerns subsection (ii), which applies to "any other decision or action" outside the enumerated statutes.

Much like Fofana, Patel argued that admissibility was a non-discretionary predicate to the discretionary, and unreviewable, adjustment of status decision:

> Eligibility determinations—which Patel characterizes as "first-step decisions"—are not judgments regarding the granting of relief because eligibility is a necessary but insufficient condition for relief.  The only judgment that can actually grant relief is what Patel describes as the "second-step decision" whether to grant the applicant the "grace" of relief from

> removal.  So, Patel argues, that is the sole judgment to which
> the bar applies.

*Id.* at 343.  The Supreme Court rejected that argument.  *Id.* at 343–44.

*Patel* thus disapproves of the sort of divvying up between predicate questions and ultimate decisions that Fofana suggests, at least in the context of 8 U.S.C. § 1252(a)(2)(B)(i).  But there are sufficient differences between § 1252(a)(2)(B)(i) and § 1252(a)(2)(B)(ii) such that *Patel* is not dispositive.

To start, the word "judgment"—which appears only in subsection (i)—was critical to the Supreme Court's decision in *Patel*.  In fact, the analysis began by asserting that "[t]he outcome of this case largely tuns on the scope of the word 'judgment.'"  *Id.* at 337.  The remainder of the opinion delivered on that preview, spending pages analyzing a word that appears nowhere in subsection (ii).  Critically, the word "judgment" is modified in (i) to cover "any judgment regarding the granting of relief."  8 U.S.C. § 1252(a)(2)(B)(i).  Because "any" is expansive, it means "the provision applies to judgments of whatever kind under § 1255, not just discretionary judgments or the last-in-time judgment." *Patel*, 596 U.S. at 338 (internal quotation omitted).  Likewise, because "regarding" has a broadening effect, subsection (i) "encompasses not just 'the granting of relief' but also any judgment relating to the granting of relief."  *Id.* at 339 (emphasis omitted).  Thus, the jurisdictional bar in (i) covers the entire package of inputs to the ultimate discretionary judgment, not solely the final, discretionary decision.

The statutory trigger in (ii) is entirely different.  Whereas (i) speaks of judgments, (ii) speaks of decisions or actions.  Whereas (i) broadens the category of judgments to "any" judgment "regarding" the granting of relief, (ii) ties the decisions or actions to only those left to the Secretary's discretion.  Indeed, the Supreme Court took issue that the challengers in *Patel* could not "show that in context, the kind of judgment to which § 1252(a)(2)(b)(i) refers is discretionary."  596 U.S. at 341 (emphasis omitted).  Subsection (ii), on the other hand, establishes that context by explicitly referencing the Secretary's discretion.

Because *Patel* is of such recent vintage, there are few decisions analyzing its application to 8 U.S.C. § 1252(a)(2)(B)(ii).  The Court acknowledges, though, that it departs from one such opinion, *Morina v. Mayorkas*, No. 22-2994, 2023 WL 22617 (S.D.N.Y. Jan. 3, 2023).  The case is indistinguishable from Fofana's: it concerns antecedent decisions of inadmissibility based on terrorism grounds foreclosing adjustment of status.  *Id.* at *4, 7. *Morina* lays out three primary arguments for extending *Patel*'s interpretation of clause (i) to clause (ii), none convincing.

To begin, *Morina* classifies (ii) as a "catchall provision" to (i).  *Id.* at *9 (citing *Kucana*, 558 U.S. at 246–47).  "Because of its intended catchall nature," says *Morina*, "it would make little sense to hold that the types of decisions that are insulated from review under (ii) are narrower than those insulated from review under subclause (i)."  2023 WL 22617, at *9.  To the contrary, the Supreme Court has instructed that it is precisely

because of (ii)'s catchall nature that it should be narrowly construed.  *See Kucana*, 558 U.S. at 247 (quoting *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)) ("[W]hen a statute sets out a series of specific items ending with a general term, that general term is **confined** to covering subjects comparable to the specifics it follows." (emphasis added)).

Next, *Morina* observes that "[t]he words 'decision or action' are at least as broad, if not broader, than the word 'judgment' in subclause (i)."  2023 WL 22617, at *10.  Not so.  A decisionmaker issues only one "judgment," so if any part of it is discretionary, the whole judgment is.  Decisions or actions are more targeted, though.  There can be multiple decisions underlying a single judgment—some discretionary, some not.  In fact, *Patel* clarified that a "judgment" "encompasses **any and all decisions** relating to the granting or denying of discretionary relief."  596 U.S. at 337 (emphasis added) (internal quotation omitted).

Finally, *Morina* points out that "discretion" in (ii) modifies "authority," not "decision or action."  2023 WL 22617, at *10.  But, as discussed, the Secretary's authority under § 1159(b) to make the admissibility determination is not discretionary.  He must determine the applicant is admissible in order to exercise his discretionary authority.  And even if *Morina* were to establish a plausible alternative reading of "authority," the presumption of reviewability still counsels the reading that maintains jurisdiction.  *See, e.g.*, *Guerrero-Lasprilla*, 140 S. Ct. at 1069.

*     *     *

In sum, § 1252(a)(2)(B)(ii)'s text and Eighth Circuit precedent support review of the non-discretionary predicate determinations, and *Patel* does not disrupt that jurisdiction.

### B.   Application to Non-Removal Orders

Though the above analysis satisfies the Court of its jurisdiction, the Court will address Fofana's alternative argument for completeness.   Fofana also argues that § 1252(a)(2)(B)(ii)'s jurisdictional bar only applies to discretionary decisions in the removal context.   But Fofana's position runs headlong into both statutory text and precedent.

To begin, § 1252(a)(2)(B) bars jurisdiction "regardless of whether the judgment, decision, or action is made in removal proceedings."  And the decisions or actions to which that sentence refers are "any" decision or action made pursuant to "this subchapter."  8 U.S.C. § 1252(a)(2)(B)(ii).  The subchapter includes both 8 U.S.C. §§ 1159 and 1182.  The plain language thus leaves little room for ambiguity.[4]  It is little surprise, then, that the Eighth Circuit has applied 8 U.S.C. § 1252(a)(2)(B)(ii) to applications for benefits outside removal proceedings without questioning the statute's applicability.  *See, e.g.*, *Bremer*, 834 F.3d at 929.

---

[4] Although Fofana provides a plausible explanation that Congress was primarily concerned with streamlining review of collateral proceedings while a removal action was ongoing, the enacted statutory text does not reflect that concern.

-17-

Dicta from *Patel* also suggests the statute applies outside the removal context. *See In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) ("Federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is of recent vintage." (cleaned up)). The dissent expressed concern that the majority's interpretation—admittedly, in the removal context—would have "the further consequence of denying **any** chance to correct agency errors in processing green-card applications outside the removal context." *Patel*, 596 U.S. at 365 (Gorsuch, J., dissenting) (emphasis in original). The majority's response was, essentially, yes:

> Patel and the Government also briefly suggest that interpreting § 1252(a)(2)(B)(i) as we do will have the unintended consequence of precluding all review of USCIS denials of discretionary relief. Those decisions are made outside of the removal context . . . . The reviewability of such decisions is not before us, and we do not decide it. But it is possible that Congress did, in fact, intend to close that door. . . . [F]oreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief.

*Id.* at 345–46 (majority opinion).

Courts of appeal that have confronted the issue post-*Patel* have all held the jurisdictional bar applies outside removal proceedings. *See, e.g., Abuzeid v. Mayorkas*, 62 F.4th 578, 584–86 (D.C. Cir. 2023) (rejecting nearly all of the arguments Fofana makes here); *Akinmulero v. Dep't of Homeland Sec.*, No. 20-1135, 2023 WL 3058014, at *1 (W.D. Wash. Apr. 24, 2023) (collecting cases from the courts of appeal).

Accordingly, the Court will not hold that 8 U.S.C. § 1252 only applies in the removal context.   But because the Court maintains jurisdiction over the predicate non-discretionary determinations of ineligibility, the Court will proceed to the merits of Fofana's challenge.

### III.    TERRORISM-RELATED INADMISSIBILITY GROUNDS

Fofana raises four independent challenges to USCIS's conclusion that he is inadmissible on terrorism grounds.   First, that USCIS applied the wrong definition of "terrorist activity," and the statutory provision under which his application was denied does not forbid fund solicitation.   Second, that the statute inquires whether ULIMO was a Tier III terrorist organization when Fofana applied for adjustment of status, rather than when the prohibited conduct occurred.   Third, that ULIMO was not a terrorist organization because its leadership did not authorize terrorist activities.   And finally, that Fofana neither knew nor should have known that ULIMO was engaged in terrorist activities.   Because Fofana's first, third, and fourth contentions are correct, USCIS's denial of Fofana's application was arbitrary and capricious.

### A.    8 U.S.C. § 1182(a)(3)(B)(i)(1)

The first issue is one of cross-references.   USCIS found Fofana inadmissible because he solicited funds for ULIMO.   The denial letter cites 8 U.S.C. § 1182(a)(3)(B)(i)(I), which holds inadmissible any noncitizen who "has engaged in a terrorist activity."   To define "engaged in a terrorist activity," USCIS looked to 8 U.S.C. § 1182(a)(3)(B)(iv), which

defines "engage in terrorist activity."  Fofana contends the proper definition is found instead in § 1182(a)(3)(B)(iii), which defines "terrorist activity."[5]

"Engage in terrorist activity" is much more capacious than "terrorist activity." "Terrorist activity," standing alone, includes only quintessential terroristic conduct— highjacking, hostage taking, assassination, and the like.  8 U.S.C. § 1182(a)(3)(B)(iii). "Engage in terrorist activity," on the other hand, includes all of the defined "terrorist activit[ies]" and much more—including providing material support.  *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(VI).  Nobody claims Fofana committed a "terrorist activity" defined in § (B)(iii), so if that is the proper cross-reference, the Secretary erroneously found Fofana inadmissible.  Accordingly, because the proper definition for "terrorist activity" in § 1182(a)(3)(B)(i)(I) is found in § (B)(iii) rather than § (B)(iv), the Court will grant summary judgment for Fofana.

Section (B)(i)(I) holds inadmissible any noncitizen who "has engaged in **a** terrorist activity" (emphasis added).  The indefinite article "a" sets off "terrorist activity" from "engaged in" such that the operative definition is of a "terrorist activity," from § (B)(iii), rather than "engage in terrorist activity," found in § (B)(iv).  Although, "[a]dmittedly, a lot

---

[5] The parties engage in brief discussion of how much deference is owed to USCIS's interpretation of the INA.  None is due here.  USCIS acknowledges that, at most, it would be entitled to *Skidmore* deference.  But one of the key factors when deciding whether to defer to an agency's legal interpretation outside the formal rulemaking process is the "thoroughness evident in its consideration."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  USCIS issued a cursory cross-reference to § (B)(iv), without any apparent consideration to the legal question at issue here: whether § (B)(iii) was the appropriate cross-reference instead.

here turns on a small word," the Court must give precise effect to "the fact Congress placed the singular article 'a' outside the defined term." *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021) (emphasis omitted) (warning against "statutory rearranging" that would nullify the effect of the word "a").

It is also telling that § (B)(i)(II), immediately after § (B)(i)(I), specifically invokes the definition from § (B)(iv).  Section (B)(i)(II) prohibits any person who "the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv))."  "Where Congress includes particular language" — here, the cross-reference to clause (iv) — "in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up).  Neither § (B)(i)(II) nor § (B)(i)(I) recites the exact sequence from § (B)(iv) of "engage in terrorist activity." Accordingly, Congress did not assume that definitional provision would automatically govern and clarified that it nonetheless wanted § (B)(iv)'s definition to apply to § (B)(i)(II). In the immediately preceding clause, faced with a similar divergence from § (B)(iv)'s precise language, Congress did not insert any cross-reference.  Where Congress did not explicitly invoke (iv), the Court will hew to Congress's precise definitional decisions.  And though the Court cannot slot the definition for "engage in terrorist activity" into § (B)(i)(I)

without nullifying language in that clause, it can insert a "terrorist activity." The Court will go no further.

8 U.S.C. § 1182(a)(3)(B)(i)(I)'s cross reference to § (B)(iii)'s definition makes sense in the statutory scheme. Section (B)(i)(I) prohibits those who have "engaged" in terrorist activity, while § (B)(iv) defines "engage in terrorist activity" in the present tense. Any "terrorist activity," including those § (B)(iii) acts taken in the past, render a noncitizen inadmissible. The next clause, § (B)(i)(II), uses the present and future tenses while referencing the § (B)(iv) "engage in terrorist activity" definition. Read wholistically, § (B)(i)(I) is phrased in the past tense and prohibits anyone who has ever engaged in any of the particularly egregious acts defined by § (B)(iii), whereas § (B)(i)(II) sweeps in the broader set of behavior defined under § (B)(iv) only if the applicant is presently engaged in or is likely to engage in those acts. If USCIS believed Fofana posed a continued threat, it should have relied on 8 U.S.C. § 1182(a)(3)(B)(i)(II) instead.

Per USCIS, cross-reference to § (B)(iii) versus § (B)(iv) is irrelevant because courts interpret any reference to "terrorist activity" in the INA to refer to both § (B)(iii) and § (B)(iv). *See, e.g.*, *Kerry v. Din*, 576 U.S. 86, 89 (2015) (defining terrorist activities by reference to §§ (B)(iii) and (iv)); *N'Diaye v. Barr*, 931 F.3d 656, 662 (8th Cir. 2019) (same). But prior cases neither asked nor answered the questions Fofana presses here. Indeed, *Kerry*—a case about substantive due process—did not even specify the provision within

§ 1182(a)(3)(B) under which terrorism grounds applied.  576 U.S. at 105–06 (Kennedy, J.,

concurring).

"Terrorist activity" does not incorporate both §§ (B)(iii) and (iv) every time it

appears in the INA.  Section (B)(iv) incorporates "terrorist activity," as defined in § (B)(iii),

as one of the ways someone can "engage in terrorist activity."  *See, e.g.*, 8 U.S.C.

§ 1182(a)(3)(B)(iv)(I).   But if § (B)(iii) always travels with § (B)(iv), there would be no

reason to define § (B)(iii) separately.  If there is never an instance in which the narrow

definition of § (B)(iii) applies while the broader definition of § (B)(iv) does not, § (B)(iii)

would be mere surplusage.  *Contra Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)

("[T]he canon against surplusage is strongest when an interpretation would render

superfluous another part of the same statutory scheme.").

Finally, USCIS asserts Fofana's interpretation would be absurd because someone

who is admissible would still be subject to criminal prosecution.  18 U.S.C. § 2339B(a)(1)

uses the INA's definitional provision to criminalize providing material support to terrorist

organizations.   Per USCIS, it would be anomalous to hold a noncitizen admissible but

subject to criminal penalties for the same conduct.   But even if that result would be

incongruous, "it is up to Congress rather than the courts to fix it.  The [result] may seem

odd, but it is not absurd."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565

(2005).   It is also possible that Congress decided that past material support is best

punished through the criminal justice rather than immigration system, with its heightened procedural protections.

In short, USCIS applied the incorrect provision when denying Fofana's application. Nowhere does it allege he engaged in a "terrorist activity," as defined by 8 U.S.C. § 1182(a)(3)(B)(iii).  Accordingly, the Court will enter summary judgment for Fofana and vacate USCIS's ruling of inadmissibility based on 8 U.S.C. § 1182(a)(3)(B)(i)(I).

### B.    8 U.S.C. § 1182(a)(3)(B)(vi)(III)

The Court is not persuaded by Fofana's second statutory interpretation argument. ULIMO is classified as a Tier III terrorist organization, which is an undesignated "group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in," listed prohibited activities.  8 U.S.C. § 1182(a)(3)(B)(vi)(III).  Fofana argues that because the provision is phrased in the present tense, the organization must be actively engaged in the prohibited activities at the time the noncitizen applies for admission.  ULIMO, on the other hand, had fully disbanded by the time Fofana applied.

Fofana makes an unsupported leap, though, by suggesting that the present tense refers to the time of application.  The clause refers to the organization's activities, not the applicant's activities.  What matters is whether the organization "engages in" prohibited conduct at the time the applicant took the prohibited action.  *See Rajabi v. Att'y Gen. U.S.*, 553 F. App'x 251, 256 (3d Cir. 2014).  If an employee is told they will not be paid if they associate with anyone who "engages in" drug use, they cannot see their user friend on Tuesday and protest when their paycheck is withheld on Friday.  That is true even if the

-24-

friend gets sober beginning Wednesday.   The friend was presently engaged in the prohibited activity when the employee broke the rules, even if the friend stopped by the time the employee sought the benefit.  So too, here.

The outcome may be different if the applicant-focused provision that interacts with the Tier III provision was phrased in the present tense.  For example, if applicants who "engage in a terrorist activity" are inadmissible, providing support to a former Tier III organization who is now entirely peaceful may not be grounds for inadmissibility.  But 8 U.S.C. § 1182(a)(3)(B)(i)(I) is phrased in the past tense, prohibiting a noncitizen who "has engaged" in a terrorist activity.   Fofana presents valid issues with USCIS's citation to § (B)(i)(I).  Verb tenses are not one of them.

### C.      ULIMO's Classification

Although the relevant inquiry is the organization's activities at the time Fofana provided material support, USCIS did not make the requisite findings to conclude ULIMO was a Tier III terrorist organization when Fofana was an LSO member in the 1990s.

In denying Fofana's application, USCIS noted a string of war crimes and crimes against humanity committed by ULIMO between 1990 and 1996.  It concluded that the activities included those forbidden by 8 U.S.C. § 1182(a)(3)(B)(iii)(V)(b), and ULIMO was thus an undesignated terrorist organization pursuant to § 1182(a)(3)(B)(vi)(III).

Although USCIS's determination letter included explanations of terrorist activities, nowhere did USCIS determine that ULIMO's leadership authorized those activities. Leadership authorization is a critical determination before Tier III status can be assigned

to a group.  *See, e.g.*, *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1344 (11th Cir.

2021); *Uddin v. Att'y Gen. U.S.*, 870 F.3d 282, 290 (3d Cir. 2017); *Hussain v. Mukasey*, 518

F.3d 534, 538 (7th Cir. 2008).   Because USCIS failed to consider authorization, its

determination that ULIMO was a Tier III terrorist organization was arbitrary and capricious

and will be set aside pursuant to 5 U.S.C. § 706(2)(A).  *See State Farm*, 463 U.S. at 43

(agency determinations are "arbitrary and capricious if the agency has . . . entirely failed

to consider an important aspect of the problem.")

USCIS  attempts  to  salvage  its  denial  letter  by  asserting  that  leadership

authorization may be inferred from the widespread nature of the offending activities.

True, authorization may be inferred.  *See Islam*, 997 F.3d at 1344.  But at the time it denied

Fofana's application, USCIS neglected to address authorization altogether.  It cannot hide

behind inferences that it raises only post hoc, in litigation.  After all, "[I]t is a foundational

principle of administrative law that judicial review of agency action is limited to the

grounds that the agency invoked when it took the action."  *Dep't of Homeland Sec. v.*

*Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (internal quotations omitted);

*see SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 87 (1943).  The record does not include

any determination of leadership authorization, whether explicit or inferred.

Where an agency has not considered a required question, the appropriate remedy

is remand for further administrative findings or institution of new proceedings.  *See*

*Regents*, 140 S. Ct. at 1907–08.  Accordingly, the Court will remand to USCIS without reaching its own conclusion on the question of leadership authorization.[6]

**D.    Fofana's Knowledge**

Finally, Fofana argues that USCIS incorrectly concluded that he knew or should have known that ULIMO was a terrorist organization.  Combining the APA and 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc) standards of review, the Court must uphold USCIS's determination unless the evidence compels the Court to conclude that Fofana proved by clear and convincing evidence that he neither knew nor should have known that ULIMO was a terrorist organization.  Nonetheless, USCIS stretches beyond what the record can support and again neglects an important statutory consideration.  Accordingly, the Court will also grant summary judgment for Fofana on the knowledge requirement.

USCIS cites two primary pieces of evidence of Fofana's knowledge.  First, and most notably, USCIS notes that Fofana twice referred to ULIMO's "fighters," showing that he knew of ULIMO's violent activities.  That misses the crux of Fofana's argument, though.  Fofana admits to knowing ULIMO was engaged in violence.  But part of the statutory requirement is that the violence be "unlawful under the laws of the place where it is committed."  8 U.S.C. § 1182(a)(3)(B)(iii).

---

[6] The Court acknowledges that the first statutory construction issue on which it vacates and remands will likely put the proceedings past the point where USCIS would need to make a Tier III determination.  The Court still addresses the leadership authorization and forthcoming knowledge issues for completeness.

As it did with ULIMO's classification, USCIS failed to consider "an important aspect of the problem." *State Farm*, 463 U.S. at 43. It harps on ULIMO's violence but does not address whether that violence was "unlawful," much less whether Fofana knew it was unlawful. ULIMO was fighting alongside government forces. Per Fofana, actions taken at the direction of the Liberian government would not be "unlawful" under the laws of Liberia. That belief was bolstered by the international support for ULIMO. Fofana has thus shown by clear, convincing, and largely unrebutted[7] evidence that he did not know, nor should he have, that ULIMO was engaged in "unlawful" violence. Accordingly, USCIS did not find he had the requisite knowledge of ULIMO's status as a terrorist organization.

USCIS also observes that ULIMO killed civilians and committed other widespread war crimes and violations of international law. It cites four corroborating reports. Fofana consistently testified that he did not know of these atrocities when he supported ULIMO. Three of the cited reports were published after Fofana's support ceased, so could not have possibly put him on notice of ULIMO's human rights violations. Fofana also proves

---

[7] USCIS bemoans that Fofana provides no evidence aside from his own testimony that ULIMO's violence was lawful. But the inquiry is not whether the violence was in fact lawful. It is whether Fofana or a reasonable person in his situation would know that the violence was unlawful. His belief that government-sanctioned violence was generally lawful was reasonable. Indeed, that belief underlies many well-established conceptions of government itself. *See, e.g.*, Max Weber, *Politics as Vocation, in Essays in Sociology* 77–78 (H.H. Gerth & C. Wright Mills trans. 1946) ("[A] state is a human community that (successfully) claims the monopoly of the legitimate use of physical force within a given territory. . . . [T]he right to use physical force is ascribed to other institutions or to individuals only to the extent to which the state permits it. The state is considered the sole source of the 'right' to use violence." (emphasis omitted)).

by clear and convincing evidence that the fourth report would not have put him on notice. The idea that a U.S. State Department report would reach Fofana in Saudi Arabia, subject to the limitations of state media control and before widespread availability of the internet, defies belief. As a broader matter, the circumstances of his life in Saudi Arabia, largely isolated from Liberia and news from within, establishes that he did not have the requisite knowledge, whether actual or constructive, of ULIMO's admittedly horrifying conduct.[8]

Because Fofana demonstrates by clear and convincing evidence that he neither knew nor should have known that ULIMO was a terrorist organization and USCIS's contrary conclusion is unsupported by the administrative record, the Court will grant summary judgment for Fofana.

## CONCLUSION

Because the Court has subject matter jurisdiction and USCIS misinterpreted 8 U.S.C. § 1182(a)(3)(B)(i)(I), did not decide whether ULIMO's leadership authorized terrorist activities, and erroneously analyzed Fofana's knowledge, the Court will grant summary judgment for Fofana. Accordingly, the Court will vacate and remand USCIS's denial of Fofana's application for administrative proceedings consistent with this opinion.

---

[8] Any knowledge Fofana might have obtained when he visited Liberia in 1996 is irrelevant because he was not an LSO member by that time.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Second Motion for Summary Judgment [Docket No. 79] is **GRANTED**;

2. Defendants' Cross Motion for Summary Judgment [Docket No. 83] is **DENIED**;

3. United States Citizenship and Immigration Service's denial of Plaintiff's Application for Adjustment of Status is **VACATED**; and

4. Plaintiff's Application for Adjustment of Status is **REMANDED** to United States Citizenship and Immigration Services for proceedings consistent with this memorandum opinion and order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED:  March 1, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge